IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN D. RICHBURG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-198-SPS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant John D. Richburg requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 31, 1966, and was forty-five years old at the time of the administrative hearing (Tr. 24). He attended some college, and has worked as an oil/gas derrick hand/worker (Tr. 15, 25). The claimant alleges inability to work since January 31, 2009, due to high blood pressure, back injury, left knee injury, and loss of toes on the right foot (Tr. 141).

## Procedural History

On November 23, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ W. Howard O'Bryan, Jr., conducted an administrative hearing, and ALJ Douglas S. Stults, writing for ALJ O'Bryan, determined that the claimant was not disabled in a written opinion dated May 25, 2012 (Tr. 9-16). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, that he could lift, carry, push, and pull ten pounds frequently and twenty pounds occasionally;

stand and walk, with normal breaks, one hour at a time and four hours total in an eight-hour workday; sit, with normal breaks, for a total of six hours in an eight-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ropes, ladders, or scaffolds; constantly use upper extremities for reaching, handling, fingering, and feeling; unlimitedly see and hear; understand, remember, and carry out complex instructions and job tasks; adequately make adaptations to work environments and adequately deal with changes in work processes and environment; and have frequent contact and interactions with co-workers, supervisors, and the general public (Tr. 12). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled under Rule 202.21 of the Medical-Vocational Guidelines, *i. e.*, "the Grids" (Tr. 16).

### Review

The claimant contends that the ALJ erred by (i) failing to use a vocational expert (VE) to identify the jobs he could perform, (ii) failing to properly account for his obesity, and (iii) failing to perform a proper credibility analysis. In support of his first contention, the claimant argues: (i) that the ALJ's application of the Grids was erroneous because his standing and walking limitations erode the occupational base, (ii) that Soc. Sec. Rul. 85-15 (cited by the ALJ) applies to solely nonexertional impairments, and (iii) the ALJ failed to consider the combined effect of his nonexertional impairments. The Court agrees that the ALJ *did not* properly apply the Grids, and the decision of the Commissioner should therefore be reversed.

"The grids" are rules promulgated by the Commissioner for determining disability based on a claimant's RFC category, age, education and work experience. *See Channel v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam). An ALJ may rely conclusively on "the grids" to find that a claimant is not disabled if: (i) the claimant has no significant nonexertional impairment; (ii) the claimant can do the full range of work at some RFC level on a daily basis; and (iii) the claimant can perform most of the jobs in that level. "Each of these findings must be supported by substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Thus, use of "the grids" is inappropriate if a claimant has a nonexertional impairment, unless the evidence supports a finding that such impairment is insignificant. *Id.* at 1490-91; 20 C.F.R., pt. 404, subpt. P, app.2, § 200.00(e). If an ALJ cannot rely conclusively on "the grids," he "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *5 (July 2, 1996).

The ALJ found that the claimant had the severe impairments of morbid obesity, chronic back secondary to degenerative disc disease of his lumbar spinal region, hypertension, osteoarthritis left knee status post 1997 surgical reconstruction ACL and MCL, and history of crush injuries right foot requiring some amputation of toes (Tr. 11, 345-350). He largely received treatment at the Carl Albert Indian Health Facility for his impairments. Treatment records from August 18, 2010, indicate he was sent for an x-ray of the lumbosacral spine, which revealed severe facet arthrosis at L4-L5 and L5-S1, mild degenerative disc disease at L2-L3, mild degenerative disc disease at L4-L5, minimal

spondylosis, and grade I spondylosis of L4 and L5 (Tr. 205). In October, a physical exam revealed that the claimant had positive straight leg raise testing for the left leg, and was unable to walk heels/toes (Tr. 192). A November 3, 2010 MRI resulted in the impression of degenerative changes and mild anterolisthesis of L4 on L5 with varying degrees of disc bulge, central canal stenosis, and neural foraminal narrowing (Tr. 207-208). The claimant continued to report back pain, and was prescribed pain medication. It was noted that he was obese, but not interested in being sent for dietary or weight loss classes (Tr. 411-421). A state reviewing physician determined that the claimant could perform the full range of light work, with no postural limitations (Tr. 400-406).

At the administrative hearing, the claimant testified that he sustained two injuries closely together in 1997, when he had three toes cut off his right foot and only two were saved, and then a week later was injured in a car accident and injured his left leg (Tr. 26). He stated that, over time, his back and leg problems, including his foot, had worsened (Tr. 27). He indicated that he experiences back pain all the time, but it varies in intensity, traveling mostly down his left leg down into the heel (Tr. 27-28). He also stated that he has problems with balance, due to the loss of his toes, as well as the numbness and pain in his left leg (Tr. 30). He testified that his activity level is almost zero (but he was a three-time All-American wrestler in college), and that he is waiting for a referral to an orthopedist but it has taken a long time (Tr. 31-32). He testified that he can sit approximately ten or fifteen minutes before needing to move, stand twenty to thirty minutes, and walk less than fifty yards (Tr. 33). He estimated he could lift up to ten pounds without pain, but that he could not squat or bend over without holding onto

something (Tr. 33). He stated that he can cook, but if he is doing the dishes he will get a stool, and that he can do other household chores "in spurts" due to the back pain (Tr. 35-36).

In his written opinion, the ALJ summarized the claimant's hearing testimony, and some of the medical evidence (Tr. 13-15). He noted the claimant's treatment records, commenting that he had not received any "crisis treatments" and noting that the claimant had declined water exercise therapy (Tr. 14). Additionally, he acknowledged the claimant's obesity, hypertension, and acute pain, but found that his obesity had remained stable, there was no evidence the claimant had experience "acute pain" since February 1, 2010, and that his hypertension was well-controlled (Tr. 14). He discounted the claimant's credibility because he had received unemployment benefits, then gave "considerable weight" to the state reviewing physician opinions but did not explain why his findings differed from theirs (Tr. 14). He then found the claimant not disabled according to the Grids, citing to Soc. Sec. Rulings 83-14 and 85-15 in support of his finding that the claimant's RFC did not erode the occupational base (Tr. 15-16). The claimant thus contends that the ALJ erred in applying "the grids" to determine he was disabled because the ALJ failed to question a VE regarding the limitation of standing and walking to four hours (when light work requires up to six hours), and due to his pain-producing impairments. Both of these arguments have merit.

"[T]he presence of a material limitation beyond those encompassed within a given RFC precludes summary invocation of a grid rule to dispose of a disability claim." *Holbrook v. Colvin*, 521 Fed. Appx. 658, 661 (10th Cir. 2013), *citing Allen v. Barnhart*,

-7-

357 F.3d 1140, 1143 (10th Cir. 2004), *citing Channel v. Heckler*, 747 F.2d 577, 581-582 (10th Cir. 1984) (collecting cases). At step five, the ALJ noted that the Soc. Sec. Rul. 83-14 and 85-15 indicated that only occasional stooping, crouching, and bending are required for light work, and that the inability to climb, balance, kneel, crawl, and ascend and descend ladders or scaffolds did not erode the occupational basis. His finding ignores the statement in Soc. Sec. Rul. 83-14 that "[t]he major difference between sedentary and light work is that most light jobs—particularly those at the unskilled level of complexity—require a person to be standing or walking most of the workday. . . . Any limitation on these functional abilities must be considered very carefully to determine its' impact on the size of the remaining occupational base[.]" Soc. Sec. Rul. 83-14, 1983 WL 31254, at *4 (1983). The ALJ thus failed to determine how the standing/walking limitation eroded the occupational base. Additionally, the ALJ erred by assigning considerable weight to the opinions of the state reviewing physicians (whose opinions he did not specify or cite to), without explaining the differences between their findings and his own. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Furthermore, despite finding that the claimant suffered from severe pain-inducing impairments, the ALJ *failed to evaluate or even mention* the effect of these pain-inducing

impairments upon the claimant's RFC.  In fact, despite the record containing the claimant's continued complaints of pain (and subsequent medication management for it), the ALJ erroneously stated that the claimant had not complained of acute pain since February 2010.  "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.2d at 1490-91*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988).  *See also Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) (finding ALJ's step-two finding made it impossible for him to conclude at step four that claimant's pain was insignificant, and he erred by conclusively relying on the grids) [unpublished opinion].  In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).  Further, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d at 1490, *citing Frey*, 816 F.2d at 516.  Because there was objective evidence that the claimant has pain-producing impairments, *i. e.*, chronic back pain secondary to degenerative disc disease and osteoarthritis of the left knee, the ALJ was thus required to consider the claimant's allegations of pain and the extent to which they

were disabling.  Here, the ALJ entirely failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, he can perform with his level of pain.  *See, e. g., Harrison v. Shalala*, 28 F.3d 112, 1994 WL 266742, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry.  The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted].  This would ordinarily require the opinion of a vocational expert, *see, e. g., id.* at *5, but, again, the ALJ did not even question a vocational expert at the administrative hearing.

Finally, the ALJ failed to consider the effect of the combined effect of the claimant's impairments at step four.  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

Because the ALJ failed to properly account for *all* the claimant's impairments as well as his pain, the decision of the Commissioner should be reversed and the case remanded for further analysis.  If this results in adjustments to the claimant's RFC, the

ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**